UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARY JEWELL,                        )   Case No. ED CV 09-676-PJW
                                    )
            Plaintiff,              )
                                    )   MEMORANDUM OPINION AND ORDER
      v.                            )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of the                 )
Social Security Administration,     )
                                    )
            Defendant.              )
_____)

I. INTRODUCTION

    Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he: 1) failed to consider a treating psychiatrist's opinion; 2) failed to consider an episode of decompensation; and 3) failed to incorporate that episode of decompensation into the hypothetical question to the vocational expert. (Joint Stip. at 2-4, 9, 11-12.) Because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on May 16, 2006, alleging that she had been unable to work since April 1, 2002, because of "metal plate with fusion in [her] neck, pain in lower back, nerve tumors in [her] feet, carpal tunnel, numbness in [her] hands, [and] depression."[1] (Administrative Record ("AR") 52, 114.)   The Agency denied the application initially and on reconsideration.   (AR 52-64.)   Plaintiff then requested and was granted a hearing before an ALJ.   (AR 66-68.) Plaintiff appeared with counsel and testified at the hearing on June 3, 2008.   (AR 20-51.)   On June 30, 2008, the ALJ issued a decision denying benefits.   (AR 5-19.)   Plaintiff appealed to the Appeals Council, which denied review.   (AR 1-4.)   Plaintiff then commenced the instant action.

## III. DISCUSSION

### 1.   Dr. Coffin's Opinion

In her first claim of error, Plaintiff contends that the ALJ erred by failing to mention a February 7, 2006 psychological assessment by "treating psychiatrist" Raymond J. Coffin.[2]   (Joint Stip. at 2-4.)   Dr. Coffin saw Plaintiff on one occasion and administered various psychological tests.   (AR 299-308.)   He diagnosed major depression, single episode, moderate, and assigned a "current" and "highest in past year" Global Assessment of Functioning ("GAF") score of 55.   (AR 307.)   Plaintiff contends that the ALJ was bound to

---

[1]   In Plaintiff's portion of the Joint Stipulation, she states that she applied for disability based on "chronic obstructive pulmonary disease (COPD), asthma, depression and anxiety."   (Joint Stip. at 2.)   It appears that this is a typographical error.

[2]   The record shows that Dr. Coffin is a psychologist.   (AR 308.)

2

1  separately discuss this report and provide reasons for rejecting Dr.

2  Coffin's opinion.   (Joint Stip. at 3-4.)

3       As an initial matter, the Agency disputes Plaintiff's contention

4  that Dr. Coffin was a "treating source."  (Joint Stip. at 4-5.)   The

5  Agency points out that Dr. Coffin saw Plaintiff only once, for the

6  sole purpose of conducting psychological testing at the request of Dr.

7  Perry Maloff, Plaintiff's Workers' Compensation psychiatrist.   (Joint

8  Stip. at 4-5.)  Even assuming for the sake of argument that Dr. Coffin

9  was a treating psychologist, see, e.g., Benton v. Barnhart, 331 F.3d

10  1030, 1035-39 (9th Cir. 2003) (declining to hold that doctor who may

11  have seen patient only once did not have "treating physician" status),

12  the Court finds for the following reasons that the ALJ did not err.[3]

13       "By rule, the Social Security Administration favors the opinion

14  of a treating physician over non-treating physicians."  Orn v. Astrue,

15  495 F.3d 625, 631 (9th Cir. 2007).  Even if the treating opinion is

16  inconsistent with other substantial evidence in the record, it is

17  still "entitled to deference" and must be considered.   Id. at 632.

18  Where the treating physicians opinion "is contradicted by another

19

20

21       [3]  If the distinction were material in this case, the Court would
likely find that Dr. Coffin was an examining, not a treating,
22  psychologist.  The record suggests that Dr. Coffin was not a member of
a "treatment team," such as that described in Benton, in which a
23  doctor managed the claimant's treatment and received reports, but did
not himself see the patient regularly.  331 F.3d at 1035-37.  Rather,
24  Dr. Coffin saw Plaintiff only once for the sole purpose of
administering psychological tests for the Workers' Compensation
25  psychiatrist.  This would seem to suggest that he was not a treating
source.  See 20 C.F.R. § 404.1502 ("We will not consider an acceptable
26  medical source to be your treating source if your relationship with
the source is not based on your medical need for treatment or
27  evaluation, but solely on your need to obtain a report in support of
your claim for disability.").
28

3

1  doctor, the ALJ may not reject this opinion without providing
2  'specific and legitimate reasons' supported by substantial evidence in
3  the record."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
4  1995) (as amended)).

5       The Court concludes that the ALJ properly considered Dr. Coffin's
6  February 7, 2006 evaluation.  As noted above, Dr. Coffin's evaluation
7  was performed at the request of and in collaboration with treating
8  psychiatrist Dr. Maloff.  (AR 204.)  In his February 28, 2006
9  "Permanent and Stationary" Workers' Compensation Report, Dr. Maloff
10  thoroughly summarized Dr. Coffin's evaluation and discussed the
11  results of the psychological tests he performed on Plaintiff.  (AR
12  219-23.)  Dr. Maloff also noted Dr. Coffin's diagnosis and GAF score
13  of 55.  (AR 222-23.)  Despite Dr. Coffin's findings, Dr. Maloff
14  diagnosed Plaintiff with a major depressive disorder, in remission,
15  and assigned a GAF score of 65 for "current" and "highest level of
16  adaptive function during the past year."  (AR 226.)

17       The ALJ, in turn, clearly considered Dr. Maloff's treatment and
18  diagnosis of Plaintiff.  In his decision, the ALJ noted Dr. Maloff's
19  initial March 9, 2005 evaluation, in which he diagnosed Plaintiff with
20  depressive disorder and assigned a current GAF score of 45, with a GAF
21  score of 65 for the past year.  (AR 15-16, 339-40.)  The ALJ also
22  noted Dr. Maloff's subsequent status reports, which indicated that
23  Plaintiff's medications were helping.  (AR 16, 333, 335.)  Finally,
24  the ALJ discussed the February 28, 2006 Permanent and Stationary
25  report, which contained a four-page summary of Dr. Coffin's February
26  7, 2006 evaluation.  (AR 16.)  In that report, the ALJ noted, Dr.
27  Maloff found that Plaintiff had "responded rather well to combinations
28  of antidepressant medications and psychotherapy" and that "her

4

1    psychiatric condition improved.   She began to once again have hope,
2    confidence, and desire to participate in pleasurable activities[,]"
3    even as he noted that she continued to have "significant mistrust of
4    persons in positions of authority."   (AR 16, 229.)   The ALJ also noted
5    that Dr. Maloff rated Plaintiff with no more than "mild" impairments
6    in social functioning; concentration, persistence, and pace; and
7    deterioration or decompensation in work or work-like settings.[4]   (AR
8    16, 232.)

9       In determining that Plaintiff's mental impairment would not
10   prevent her from working, the ALJ gave "great weight" to the opinion
11   of psychologist Malancharuvil, who testified as a medical expert at
12   the hearing that Plaintiff would be limited to moderately complex
13   tasks, should not operate hazardous machinery, should not be around
14   safety operations, and should not do fast-paced work.   (AR 16, 17,
15   29.)   The ALJ adopted these functional limitations in his residual
16   functional capacity determination.   (AR 11-12.)   Dr. Malancharuvil
17   also testified that Plaintiff's "mild to moderate" psychiatric
18   difficulties were consistent with two consultative psychiatric
19   examinations conducted in August 2006 and April 2007 by Dr. Reynaldo
20   Abejuela.   (AR 29-30.)   The ALJ accepted Dr. Abejuela's opinions too
21   because he performed two separate mental status examinations on

22
23

24      [4]   With respect to "work functions," Dr. Maloff opined that
Plaintiff had a "slight to moderate" impairment in her "ability to
25   relate to other people beyond giving and receiving instructions," and
her "ability to effectively influence people on a consistent basis";
26   and a "slight" impairment in her "ability to make generalizations,
evaluations, or decisions without immediate supervision," and her
27   "ability to carry out responsibility for direction, control, and
28   planning."   (AR 236.)

1  Plaintiff and obtained "very similar results," finding that Plaintiff
2  was no more than mildly impaired.   (AR 17, 244, 353-54.)

3      Notably, the ALJ found that, "[i]n reality, the findings and
4  conclusions of . . . Dr. Maloff are not inconsistent with the findings
5  herein[,]" in that Dr. Maloff "only found [Plaintiff] to be partially
6  disabled and his treatment was minimal and conservative."   (AR 17,
7  18.)   Furthermore, Dr. Maloff noted that Plaintiff's condition
8  improved with medication and termed her depression "moderate."   (AR
9  18.)

10      Though the ALJ did not separately discuss Dr. Coffin's
11 evaluation, he was not required to in these circumstances, where Dr.
12 Coffin's opinion was plainly incorporated into Dr. Maloff's report and
13 where the ALJ thoroughly considered that report.   *See Howard ex rel.*
14 *Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that,
15 "in interpreting the evidence and developing the record, the ALJ does
16 not need to discuss every piece of evidence.") (citation omitted).
17 Moreover, Dr. Coffin's February 2006 opinion, if it can be called one,
18 is not inconsistent with the ALJ's findings as a whole and, therefore,
19 the ALJ was not required to provide reasons for rejecting it.   *See*
20 *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (holding that
21 clear and convincing reasons are not required where no conflict exists
22 between treating doctor's opinion and ALJ's decision).[5]

23
24
25      [5]   The Court rejects the implication in Plaintiff's argument
26 that Dr. Coffin's GAF score of 55 means that he found that Plaintiff
   had "moderate difficulty in social, occupational, or school
27 functioning."   (Joint Stip. at 3.)   In fact, Dr. Coffin made no
   functional limitation findings, and the ALJ was not required to
28 separately discuss the GAF score.   *Wolff*, 341 F.3d at 1012.

1  Even if the ALJ's residual functional capacity determination
2  could be construed as conflicting with Dr. Coffin's evaluation, it
3  would still be upheld because it is supported by substantial evidence.
4  The ALJ's decision was based on his "detailed and thorough summary of
5  the facts and conflicting clinical evidence . . . his interpretation
6  thereof, and [his] findings." *Orn*, 495 F.3d at 632 (citing *Magallanes*
7  *v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   The ALJ relied on the
8  medical expert and the consultative psychiatrist, which he was
9  entitled to do.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th
10 Cir. 2001) (holding that opinion of non-examining medical expert
11 constitutes substantial evidence "when it is consistent with other
12 independent evidence in the record," and that opinion of consulting
13 physician "alone constitutes substantial evidence" when it rests on
14 independent examination findings).  For these reasons, this claim does
15 not require remand or reversal.

16       2.   Decompensation Episode

17      In her second claim of error, Plaintiff contends that the ALJ
18 misrepresented the record by finding that she had not experienced any
19 episodes of decompensation.  (Joint Stip. at 9.)  Plaintiff argues
20 that Dr. Coffin's February 2006 diagnosis of major depression, single
21 episode, moderate, and GAF score of 55, which came three months after
22 Plaintiff had been assessed a GAF score of 90 by another doctor,
23 "indicat[ed] that Plaintiff's condition ha[d] indeed decompensated
24 within a few months."  (Joint Stip. at 9.)  There is no merit to this
25 contention.

26      The governing regulations define "episodes of decompensation" as,

27           [E]xacerbations or temporary increases in symptoms or
           signs accompanied by a loss of adaptive functioning, as
28           manifested by difficulties in performing activities of daily

7

1    Even if the ALJ's residual functional capacity determination
2  could be construed as conflicting with Dr. Coffin's evaluation, it
3  would still be upheld because it is supported by substantial evidence.
4  The ALJ's decision was based on his "detailed and thorough summary of
5  the facts and conflicting clinical evidence . . . his interpretation
6  thereof, and [his] findings." Orn, 495 F.3d at 632 (citing Magallanes
7  v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ relied on the
8  medical expert and the consultative psychiatrist, which he was
9  entitled to do. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
10  Cir. 2001) (holding that opinion of non-examining medical expert
11  constitutes substantial evidence "when it is consistent with other
12  independent evidence in the record," and that opinion of consulting
13  physician "alone constitutes substantial evidence" when it rests on
14  independent examination findings). For these reasons, this claim does
15  not require remand or reversal.

16        2.    Decompensation Episode

17    In her second claim of error, Plaintiff contends that the ALJ
18  misrepresented the record by finding that she had not experienced any
19  episodes of decompensation. (Joint Stip. at 9.) Plaintiff argues
20  that Dr. Coffin's February 2006 diagnosis of major depression, single
21  episode, moderate, and GAF score of 55, which came three months after
22  Plaintiff had been assessed a GAF score of 90 by another doctor,
23  "indicat[ed] that Plaintiff's condition ha[d] indeed decompensated
24  within a few months." (Joint Stip. at 9.) There is no merit to this
25  contention.

26        The governing regulations define "episodes of decompensation" as,

27            [E]xacerbations or temporary increases in symptoms or
              signs accompanied by a loss of adaptive functioning, as
28            manifested by difficulties in performing activities of daily

                                    7

1  living, maintaining social relationships, or maintaining
   concentration, persistence, or pace.  Episodes of
2  decompensation may be demonstrated by an exacerbation in
   symptoms or signs that would ordinarily require increased
3  treatment or a less stressful situation (or a combination of
   the two).  Episodes of decompensation may be inferred from
4  medical records showing significant alteration in
   medication; or documentation of the need for a more
5  structured psychological support system . . .; or other
   relevant information in the record about the existence,
6  severity, and duration of the episode.

7  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

8      The gist of Plaintiff's claim appears to be that, because Dr.

9  Boehm, a Worker's Compensation doctor, assessed her GAF at 90 in

10 November 2005 and Dr. Coffin assessed it at 55 three months later, in

11 February 2006, Plaintiff must have had an episode of decompensation in

12 the interval between the two examinations, which the ALJ overlooked.

13 The Court disagrees.

14     The report from the Workers' Compensation doctor who assessed

15 Plaintiff with a GAF of 90 in 2005 is not contained in the file.

16 Thus, it is very difficult to assess exactly what he was thinking when

17 he scored Plaintiff's GAF.[6]  Dr. Maloff minces no words.  He thinks

18 that this doctor's report is "ludicrous."  (AR 229.)  Plaintiff, in

19 fact, claims she never saw Dr. Boehm, but saw another doctor.  (AR

20 223.)  Thus, there are many questions about the validity of Dr.

21 Boehm's findings.

22     But that is not the reason for rejecting Plaintiff's arguments

23 here.  A fair reading of this record shows that Plaintiff did not

24 suffer an episode of decompensation between the time she met with the

25

26     [6]  It is also unclear from the record when the Workers'
   Compensation doctor conducted his evaluation.  Though Plaintiff
27 contends in the Joint Stipulation that it took place in November 2005,
   (Joint Stip. at 9), Dr. Maloff, in summarizing the report, states that
28 it took place in July 2005.  (AR 223.)

8

Workers' Compensation doctor sometime in 2005 and Dr. Coffin in February 2006. To begin with, during this period, Plaintiff never reported to anyone that she was suffering a breakdown. Nor did she subsequently report to Dr. Coffin or Dr. Maloff in February 2006 that she had recently experienced a breakdown. To the contrary, in February 2006, she told Dr. Maloff that she was doing much better as of late and had even tried to return to the workforce:

> Ms. Jewel has a strong motivation to return to work and participated for a period of time in a computer course through vocational rehabilitation, using voice-activated equipment to operate a computer. At the time of this evaluation, she had started part-time December 7, 2005, attempting to sell vitamin products over the phone about two hours a week. She hoped to increase the amount of time she could spend performing these activities. She stated that her mood has improved significantly, providing her with more energy, initiative, and hope than she had had in the last several years.

(AR 209.)

Though she expressed concerns about her marriage and her life, Dr. Maloff noted in February 2006 that, "[o]verall, however, she describes her emotional condition as having significantly improved." (AR 209.) Dr. Maloff went on to explain in his report, "She claims that her mood is overall much better. She states that she is once again able to experience a sense of pleasure, hope, and enthusiasm, though remains very concerned about her vocational alternatives, given her orthopedic restrictions." (AR 212.)

9

1    Thus, Plaintiff's argument that Dr. Coffin's GAF score of 55 in
2  February 2006 is indicative of the fact that she had experienced an
3  episode of decompensation between November 2005 and February 2006 is
4  contrary to what Plaintiff was reporting at the time.  It is also
5  contrary to what Dr. Maloff found at the time.  (AR 229-36.)  In fact,
6  not even Dr. Coffin found that Plaintiff had suffered an episode of
7  decompensation.  (AR 219-23.)

8    Further, given the opportunity at the administrative hearing to
9  explain her psychiatric/emotional problems to the ALJ, Plaintiff never
10 claimed that she had had an episode of decompensation between November
11 2005 and February 2006.  (AR 22-31.)  Nor did her lawyer claim that
12 she had at the hearing.

13    The fact that one doctor assessed Plaintiff's GAF at 90 and three
14 (or six) months later another doctor assessed it at 55 is likely due
15 to the subjectiveness of the GAF scoring.  The Workers' Compensation
16 doctor who assessed Plaintiff's GAF at 90 was hired by Plaintiff's
17 former employer to perform the analysis.  Dr. Coffin was hired by Dr.
18 Maloff, who, in turn, had been hired by Plaintiff.  Further, though
19 Dr. Coffin assessed a 55 on February 7, 2006, Dr. Maloff, after noting
20 Dr. Coffin's score, assessed Plaintiff's GAF at 65 three weeks later.
21 (AR 233.)

22    In the end, the Court concludes that there is no evidence in this
23 record that Plaintiff suffered an episode of decompensation between
24 November 2005 and February 2006.  In fact, the evidence suggests the
25 opposite.  For these reasons, the Court concludes that the ALJ did not
26 err when he concluded that Plaintiff had not suffered an episode of
27 decompensation.

28

3.   The Hypothetical Question

In her third claim of error, Plaintiff contends that the ALJ erred when he failed to incorporate her episode of decompensation into the hypothetical question that he posed to a vocational expert at the administrative hearing.  (Joint Stip. at 11-12.)  Largely for the reasons already set forth above, this claim has no merit.

Where a hypothetical question excludes properly supported restrictions, it is legally inadequate. *Robbins v. Soc. Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).  An ALJ may, however, properly limit a hypothetical to only those restrictions that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  As noted above, Plaintiff has failed to establish that she suffered an episode of decompensation in the three months before Dr. Coffin's evaluation.  The ALJ's failure to include this in the hypothetical question was not error.

Even assuming that Plaintiff had suffered such an episode in February 2006, the ALJ would not have been required to include the possibility that she would have another one after June 2008 in the hypothetical question to the vocational expert.  The fact that Plaintiff had not experienced another episode in the intervening 28 months suggests that she was not likely to suffer one thereafter. That fact, combined with the fact that none of the psychiatrists or psychologists predicted that she would experience such an episode after June 2008, eliminated any need to include that possibility in the hypothetical question.  For these reasons, the Court concludes that the ALJ did not err.

IV. CONCLUSION

    For the foregoing reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

    IT IS SO ORDERED.

    DATED: July 12, 2010.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JEWELL\Memo_Opinion.wpd

12